IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAVID FERRELL,     PLAINTIFF
ADC #105996

v.     4:20-cv-00035-KGB-JJV

WENDY KELLEY,
Director/Superintendent, ADC; *et al.*     DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

### DISPOSITION

**I.  INTRODUCTION**

David Ferrell ("Plaintiff") is a prisoner in the Cummins Unit of the Arkansas Division of Corrections ("ADC"). He has filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983

alleging several Defendants violated his constitutional rights while he was in the Varner Unit. (Doc. 16.)  Plaintiff's remaining claims are that Defendants Hobby Craft Supervisor Charlotte Jones, Deputy Warden Jared Byers, and Warden James Gibson retaliated against him for filing grievances by: (1) suspending his hobby craft privileges; (2) shaking down his cell, taking his personal properly, and placing him on investigatory status for thirty days at the Varner Super Max Unit ("VSM"); (3) transferring him to the Cummins Unit; and (4) finding him guilty of a disciplinary infraction.[1]  (*Id.*)  Plaintiff brings these constitutional claims against Defendants in their individual capacities, and monetary damages are the only remedy he seeks.  (*Id.*)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity and that Plaintiff's retaliation claims are barred by the *Heck* doctrine.  (Docs. 60, 61, 62.)  Plaintiff has filed a Response.  (Docs. 64, 65, 66.)  And, Defendants have filed a Reply, a Corrected Exhibit, and a Supplemental Exhibit.  (Docs. 69, 71-1, 73.)  After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be GRANTED, and Plaintiff's retaliation claims against Defendants Jones, Byers, and Gibson be dismissed with prejudice.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if

---

[1] On February 4, 2020, I issued a Partial Recommended Disposition suggesting, pursuant to 28 U.S.C. § 1915A screening, that: (1) Plaintiff's double jeopardy, due process, and personal property claims be dismissed without prejudice for failing to state a claim upon which relief may be granted; (2) his claims arising at the VSM and Cummins Units be dismissed without prejudice as being improperly joined; and (3) Defendant Mailroom Supervisor Tina Gibson be dismissed without prejudice because no plausible claim was pled against her.  (Doc. 17.)  On March 16, 2020, I issued a second Partial Recommended Disposition suggesting, pursuant to Defendants' Motion for Judgment on the Pleadings, that: (1) the official capacity claims against all Defendants be dismissed with prejudice; and (2) Plaintiff's corrective inaction claim against Defendant Wendy Kelley be dismissed without prejudice.  (Docs. 21, 31.)  Both Partial Recommended Dispositions are still pending.

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.    FACTS

The evidence viewed in the light most favorable to Plaintiff is as follows. The Varner Unit has a hobby craft program that allows inmates with good behavior to make leather, wood, and other crafts. (Docs. 60-1, 60-2, 60-3.) To prevent contraband from entering the facility, inmates must purchase all supplies through the mail from pre-approved vendors. (*Id.*) A list of pre-approved vendors is kept in Hobby Craft Supervisor Jones's office, and mail order forms for each of those vendors are in the work area. (*Id.*) When Plaintiff entered the craft program on January 17, 2017, he signed a Work Craft Agreement acknowledging that supplies must be purchased from

pre-approved vendors and that he could temporarily suspended from the program or disciplined if he violated any rules. (*Id.*)

On November 20, 2018, Defendant Jones discovered Plaintiff had purchased wood from Steve Wall Lumber Company, which was not a pre-approved vendor. (Docs. 2 at 37-28; 60-1; 60-6; 69-1; 71-1.) Plaintiff told her that the purchase had been approved by Deputy Warden Byers. (*Id.*) However, Defendant Byers denied doing so. (*Id.*) Instead, he told Defendant Jones that he had approved the issuance of a check from Plaintiff's inmate account to pay for the supplies, as was his usual practice, without verifying that it was being sent to a pre-approved vendor.[2] (*Id.*) Defendant Byers then instructed Defendant Jones to suspend Plaintiff's craft privileges for thirty days for violating the hobby craft rules. (*Id.*) She did so on November 21, 2018. (*Id.*; Doc. 2 at 39-40.)

In early January 2019, a mailroom clerk noticed two hobby craft packages had been returned to the Unit unopened, to the same prisoner, and with a "return to sender" notification, which was unusual. (Doc. 60-6, 60-7, 60-8.) The clerk reported the information to Chief Security Officer ("CSO"), who is not a defendant in this lawsuit. (*Id.*) The Chief Security Officer ("CSO") reported this information to Defendant Warden Gibson and started an investigation. (*Id.*) During the investigation, a confidential informant told the CSO that Plaintiff was building wooden boxes containing secret compartments and mailing them out under other inmates' names with promise of payment. (*Id.*) According to the informant, the plan was for the recipient to open the package, hide contraband in hidden compartments, and label the box "return to sender."

---

[2] In his affidavit, Deputy Warden says he approves all outgoing checks to ensure the inmates have sufficient funds in their prison accounts, the check are signed by the inmates in his presence, and that the signatures are witnessed by a third-party staff member. Deputy Warden says he does not verify the legitimacy of any check recipients. (Doc. 60-6.)

4

(*Id.*)  To make sure the plan would work, the informant said several "dummy" or test boxes had been mailed out with instructions to the recipients to return them to sender without putting any contraband inside.  (*Id.*)  If the dummy boxes we returned without being searched and the hidden compartments found, then a second set of boxes would be sent out for the receipt of contraband.  (*Id.*)

Based on this information, Defendant Byers and the CSO ordered a search of Plaintiff's cell on January 10, 2019.[3]  (*Id.*; Doc. 2 at 53-55.; Doc. 64 at 29.)  The officers found a large unfinished wooden box with a hidden panel concealing six, rectangular, empty slots along the outer walls of the box that could be used to hide a small cell phone or other contraband.  (Docs. 60-8, 60-9.)  No contraband was found inside the box, but the discovery corroborated the confidential information about the dummy boxes and Plaintiff's participation in a scheme to try to smuggle contraband into the facility. (*Id.*) The box was confiscated and put in Warden Gibson's office.  (*Id.*, 60-7).  The officers then inventoried and seized Plaintiff's personal property and placed him on investigative status at the VSM for thirty days. (Docs. 60-6, 60-7, 60-8.)

On January 22, 2019, Plaintiff met with Warden Gibson in his office. (Doc. 60-7, Doc. 2 at 6.) Plaintiff said he was making the box for his grandson to use to store video games. (*Id.*) Defendant Gibson told Plaintiff he would hold the box in his office until the investigation was complete.  (*Id.*)  According to Plaintiff's sworn affidavit, Defendant Gibson allegedly said Plaintiff could "not threaten him with grievances like I did with Byers," that Plaintiff was "just another fucking inmate," and that "he did not give a shit about a grievance."  (Doc. 2 at 69.)

---

[3] The CSO says in his affidavit that he ordered the search.  (Doc. 60-8.)  Plaintiff said in his grievance that Defendant Byers ordered the search.  (Doc. 2 at 53-55.)  Defendant Byers's affidavit does not say who ordered the search.  (Docs. 60-6.)  I will construe this ambiguity in Plaintiff's favor.

Defendant Gibson has not acknowledged or denied making these statements.   (Doc. 60-7.)

On February 8, 2019, Plaintiff was transferred from the VSM to the Cummins Unit.   (Doc. 2 at 90.)   Defendants Gibson and Byers say they did so to get Plaintiff "out of his comfort zone" and that "[s]ometimes, an inmate who stays at one unit too long becomes too comfortable, and the staff around him become complacent." (Docs. 60-6, 60-7.)

On February 11, 2019, the Varner Unit mailroom received a box "return to sender" that was mailed from inmate Michael Bowden to a woman in Little Rock, Arkansas.   (Docs. 60-9, 60-10.)   The CSO opened the box and found inside a large wooden jewelry box that was similar in appearance to the game box he found inside Plaintiff's cell.   (*Id*.)   The CSO dismantled the box and found a secret compartment containing six, rectangular, empty slots along the outer walls of the box that were identical to the slots found in the hidden compartment of the wooden game box found plaintiff's cell.   (*Id.*)   The jewelry box did not contain contraband, but it was consistent with the confidential informant's description of the "dummy" or test boxes.   (*Id*.)   And, based on unspecified "written and verbal confidential information," the CSO determined Plaintiff was the "original owner" of the jewelry box that had been mailed out in another inmate's name.   (Doc. 60-10 at 1, 3.)   The CSO then charged Plaintiff with a major disciplinary.   (*Id*.)

On February 25, 2019, Plaintiff attended a hearing before a non-party hearing officer and denied any involvement in the mailing scheme.   (Doc. 73-1).   After reviewing Plaintiff's testimony, the CSO's disciplinary charge, the CSO's investigative report, and the confidential statements, the hearing officer found Plaintiff guilty of unauthorized use of the mail and asking/offering inducement to other inmates.   (*Id*.)   Importantly, Plaintiff was not charged with or convicted of bringing or attempting to bring contraband into the facility.   (*Id*.)   As punishment, Plaintiff was ordered to spend thirty days in punitive isolation, his class was reduced,

and his commissary, phone, and visitation privilege were suspended for sixty days. But, he did not lose any earned good time credits. (*Id.*)

## IV. ANALYSIS

### A. The *Heck* Doctrine

First, Defendants argue this case must be dismissed pursuant to the *Heck* doctrine. I disagree. In *Heck v. Humphrey,* 512 U.S. 477, 487 (1994), the United States Supreme Court held that if a judgment in favor of a prisoner would necessarily imply the invalidity of the conviction, continued imprisonment, or sentence, then a prisoner cannot bring a § 1983 claim until the conviction or sentence is reversed, expunged, or called into question by the highest state court or by the issuance of a federal writ of habeas corpus. Under some state statutes, the loss of good time credits can result in a shortened criminal sentence. Thus, the *Heck* rule can apply to prison disciplinary proceedings when good time credits are lost. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002); *Sheldon v. Hundley,* 83 F.3d 231, 233-34 (8th Cir. 1996). However, Plaintiff did *not* lose any good time credits as a result of his February 24, 2019 disciplinary convictions. Thus, the *Heck* rule does not apply.

### B. Qualified Immunity

Defendants also argue they are entitled to qualified immunity from the retaliation claims Plaintiff has raised against them. I agree. Qualified immunity protects government officials who acted in an objectively reasonable manner and shields them from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary

judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

In this case, Defendants are entitled to qualified immunity if: (1) the facts, viewed in the light most favorable to Plaintiff, do not establish a violation of his constitutional right to be free from retaliation; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that reasonable officials would not have known their actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 232; *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). I find Defendants are entitled to qualified immunity on each of Plaintiff's retaliation claims based on the first prong of the analysis.

Specifically, to defeat qualified immunity and establish a violation of his constitutional right to be free from retaliation, there must be evidence viewed in the light most favorable to Plaintiff that he: "(1) engaged in a protected activity, (2) [Defendants] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity,[4] and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Spencer v. Jackson Cnty.,* 738 F.3d 907, 911 (8th Cir.

---

[4] "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right." *Spencer,* 738 F.3d at 911. For instance, prisoners do not have a constitutional right to participate in discretionary programs such as hobby crafts, maintain their privileges, or be confined in the institution of their choosing. However, none of these actions can be taken against a prisoner in retaliation for exercising their constitutional right to file grievances against prison officials.

2013). For the following reasons, I find Defendants are entitled to qualified immunity from each of Plaintiff's retaliation claims.

### 1. Suspension of Hobby Craft Privileges

Plaintiff says Defendants Jones and Byers suspended his hobby craft privileges on November 12, 2018, because he filed grievances against them. It is well settled that filing grievances is constitutionally protected activity. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). But, the grievances in the record (Doc. 2 at 42-58, 78-85) were filed *after* Defendants Jones and Byers discontinued Plaintiff's hobby craft privileges, and thus, could not be motive for either of them to want to retaliate against him. *See Lewis*, 486 F.3d at 1029 ("The lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of a causal connection"). Plaintiff also says Defendant Jones suspended his hobby craft privileges because he refused to sell her his crafts for a decreased price.[5] Plaintiff does not have any evidence to support that allegation, and, as previously mentioned, he did not file any grievances raising that allegation unit *after* his hobby craft privileges were suspended. More importantly, it is undisputed Defendant Byers - *and not Defendant Jones* - decided to suspend Plaintiff's hobby craft privileges. In fact, the undisputed evidence demonstrates Defendant Jones was not a decisionmaker in any of the alleged retaliatory actions that were taken against Plaintiff. Thus, she is entitled to qualified immunity on all retaliation claims brought against her. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019) (affirming summary judgment were there was no evidence connecting several defendants to the

---

[5] According to Plaintiff, Defendant Jones was running a "criminal enterprise" by forcing inmates to sell her craft items at a "supervisor discount." He also claims she stole craft supplies such as plywood from the prison, forced inmates to make them into crafts, and then sold them at a profit outside of the prison. (Docs. 65, 66.) However, Plaintiff has not provided *any* evidence to support these allegations.

9

allegedly retaliatory conduct); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (§ 1983 liability requires causal link to, and direct responsibility for, the alleged deprivation of rights).

Finally, it is undisputed Plaintiff purchased supplies from a non-approved vendor, which according to the ADC rules and the agreement Plaintiff signed, is a basis for suspending hobby craft privileges. It is well settled that "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Sanders v. Hobbs*, 773 F.3d 186, 109 (8th Cir. 2014); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008); *see also McArty v. Littleton*, No. 6:18-cv-6032, 2019 WL 3021214 (W.D. Ark. Jul. 10, 2019) (unpublished opinion) (granting summary judgment on a prisoner's retaliation claim when the evidence established his hobby craft privileges were suspended for a rule violation). Accordingly, I conclude Defendants are entitled to qualified immunity, and I recommend this retaliation claim be dismissed with prejudice.

**2.     Cell Search, Property Seizure, & Placement on Investigative Status**

Plaintiff says Defendants Byers ordered the January 10, 2019, search of his cell, seizure of his property, and placement on investigative status at the VSM to retaliated against him for filing grievances. On December 14 and 21, 2018, which was about a month before the search, Plaintiff filed three grievances (VU-18-759, VU-18-763, VU-764) alleging his hobby craft privileges were wrong fully suspended. (Doc. 2 at 42-53.) The gravamen of Plaintiff's complaints were against Defendant Jones, and not Defendant Byers. More importantly, the grievances were summarily denied without any finding that Deputy Warden Byers acted improperly. Thus, the filing of these grievances provided no motive for Defendant Byers to want to retaliate against Plaintiff. In contrast, the undisputed evidence shows the search of Plaintiff's cell was ordered after the CSO - who *had no motive to retaliate* against Plaintiff - discovered during his investigation that Plaintiff

might be involved in a plot to violate ADC mail rules and smuggle contraband into the ADC. And, importantly, the search of Plaintiff's cell did, in fact, reveal a box with hidden compartments that matched the description provided by the confidential informant. Based on this information, Defendant Byers seized Plaintiff's personal property and placed him on investigative status, which is customary, to prevent him from further engaging in any wrongful activity while the investigation was be completed. Because Plaintiff has not come forward with any evidence suggesting these actions were taken for impermissible, retaliatory reasons, I conclude Defendant Byers is entitled to qualified immunity. *See Lewis*, 486 F.3d at 1029 (to avoid summary judgment, a prisoner must present "affirmative evidence of a retaliatory motive")*; Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (A prisoner has a "heavy evidentiary burden" to establish retaliation and "[m]erely alleging that an act was retaliatory is insufficient").

### 3. Transfer to the Cummins Unit

Plaintiff alleges Defendants Gibson and Byers retaliated against him by transferring him from the VSM to the Cummins Unit on February 9, 2019.[6] Prisoners do not have a constitutional right to remain in a particular institution. *Saylor v. Nebraska,* 812 F.3d 637, 646 (8th Cir. 2016). "In fact, prison officials may transfer a prisoner for whatever reason or for no reason at all" so long as retaliation is not the "motivation behind the transfer." *Id.* And, in "addition to proving the other elements of retaliation, [a prisoner] must prove that he would not have been transferred but for an unconstitutional, retaliatory motive." *Spencer,* 738 F.3d at 912; *see also Goff v. Burton*, 7

---

[6] It is unclear from their affidavits, whether Defendants Gibson and/or Byers decided to transfer Plaintiff. (Docs. 60-6, 60-7.) For Plaintiff's benefit, I will assume that they both were. In their Summary Judgment papers, Defendants treat this transfer as if it occurred as a result of the February 25, 2019 disciplinary conviction. But, the record demonstrates that it happened before. (Docs. 2 at 90; 60-10.)

11

F.3d 734, 737 (8th Cir. 1993) (a prisoner "face[s] a substantial burden in attempting to prove that the actual motivating factor for his transfer was the impermissible retaliation").

Plaintiff says Defendants Byers and Gipson ordered his transfer because he filed two grievances (VSM-19-199, VSM-19-200) against them on January 11, 2019, which was about a month before his transfer.[7] (Doc. 2 at 53-55, 81-83). In those grievances, Plaintiff alleged Defendant Byers ordered the search of his cell, seizure of his personal property, and placement on investigative status for retaliatory reasons. (*Id*.) But, prison officials found no merit to Plaintiff's allegations and found no wrongdoing on the part of Deputy Warden Byers. Thus, the filing of these grievance provide no motive for Defendant Byers to want to retaliate against Plaintiff.

As to Defendant Warden Gibson, the January 11, 2019 grievances are addressed to him as the reader. Plaintiff did not allege Warden Gibson had done anything wrong. Thus, the filing of those grievances provided no motive for Defendant Gibson to want to retaliate against Plaintiff. And, during their January 22, 2019 conversation in Defendant Gibson's office, Defendant Gibson allegedly told Plaintiff he did not care about any grievances and would not be threatened by them. Although Defendant Gibson's alleged choice of words was harsh and inappropriate, they do not support Plaintiff's contention of a retaliatory motive. Finally, both Deputy Warden Byers and Warden Gibson declare in their sworn affidavits that Plaintiff's transfer to the Cummins Unit was based on the CSO's investigation and the desire to separate Plaintiff from any prisoners or guards who might have been assisting him in violating ADC rules. (Docs. 60-6, 60-7.) Plaintiff has

---

[7] Plaintiff also filed VSM-19-196 alleging that some of his confiscated property had been lost because it was not properly inventoried. (Doc. 2 at 56-68.) Because Defendants Gipson and Byers are not named in that grievance, it is irrelevant.

not refuted that testimony. Finally, I note Plaintiff was transferred from the VSM, which the most restrictive prison in the ADC, to the Cummins Unit. Because there is no evidence Plaintiff was transferred to the Cummins Unit for retaliatory reasons, I conclude Defendants Gibson and Byers are entitled to qualified immunity. *See Saylor*, 812 F.3d at 646 (granting qualified immunity when there was insufficient evidence that a prisoner was transferred for retaliatory reasons); *Webb v. Hedrick*, No. 09-2896, 2010 WL 4366438 (8th Cir. Nov. 5, 2010) (unpublished opinion) ("Even at summary judgment, the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would have not occurred").

### 4. Disciplinary Conviction

Finally, Plaintiff says his February 25, 2019 disciplinary conviction was retaliatory. However, a disciplinary conviction cannot be deemed retaliatory if it was issued for an actual violation of prison rules. *Sanders,* 773 F.3d at 190-91; *Hartsfield,* 511 F.3d at 829. Stated differently, a retaliation claim fails as a matter of law if there was "some evidence" to support the disciplinary conviction. *Id.* As explained by the United States Supreme Court, the "some evidence" standard is a very low threshold that "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985); *see also Sanders,* 773 F.3d at 190. "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (emphasis added.) In the context of a retaliatory discipline charge, the Eighth Circuit has held that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Sanders*, 773 F.3d at 190; *Hartsfield*, 511 F.3d at 831. And, this rule applies

13

even if the charging officer has a motive to retaliate against the prisoner, so long as the evidence is reviewed by an impartial hearing officer. *Id.*

Here it is undisputed Plaintiff's disciplinary convictions were supported by the CSO's disciplinary charge and investigative report, "verbal and written confidential information," Plaintiff's wooden game box with the hidden compartments, and the wooden jewelry box with identical hidden compartments that was mailed out of the Unit in another inmate's name. (Doc. 60-10, 73-1). And I note, the wooden boxes corroborated the confidential information that Plaintiff was building boxes with hidden compartments and mailing them out under other inmate's names in return for payment. Finally and most importantly, *neither the CSO nor the hearing officer* had any motive to retaliate against Plaintiff.[8] Although Plaintiff strongly denies violating any prison rules, all that is required is "some evidence" suggesting his disciplinary convictions were entered for rule violations rather than retaliatory reasons. And, the evidence presented during Plaintiff's disciplinary hearing clearly exceeds that threshold. As explained by the Eighth Circuit, a disciplinary decision made by an impartial decision maker and supported by some

---

[8] In *Jones v. Kelley*, 760 Fed. Appx. 496, 497 (8th Cir. Mar. 29, 2019) (unpublished decision), which was a retaliation case, the charging officer's disciplinary report was based solely on information provided by a confidential informant, rather than the officer's personal knowledge. The Eighth Circuit remanded the case to the trial court to conduct an *in camera* review of the confidential informant's statement to ensure that it was "some evidence to support the disciplinary conviction." (*Id.*) I find this case distinguishable for two reasons. First and foremost, unlike the charging officer in *Jones*, the CSO in this case had *no motive* to retaliate against Plaintiff. Thus, according to well established case law, his statement standing alone is sufficient to defeat or "checkmate" a retaliatory discipline claim. Second, the confidential information was corroborated by the two wooden boxes and the CSO's personal investigation. *See Espinoza v. Peterson,* 283 F.3d 949, 952 (8th Cir. 2002) ("When there is other evidence supporting the disciplinary decision, due process is satisfied without determining the reliability of the confidential informant"). Finally, the cases cited in the *Jones* involved the loss of good time credits, while this case does not. Thus, I find no need to conduct an *in camera* review of the confidential information provided to the impartial hearing officer who found Plaintiff guilty of the disciplinary charges.

evidence "essentially checkmates" a retaliation claim. *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994). Accordingly, I conclude Defendants are entitled to qualified immunity on this retaliation claim.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 60) be GRANTED and Plaintiff's retaliation claims against Defendants Jones, Byers, and Gibson be DISMISSED with prejudice.

2. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 19th day of January 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE